CIVILLE & TANG, PLLC
PATRICK CIVILLE
330 Hernan Cortez Avenue, Suite 200
Haganta, Guam 96910
Telephone: (671) 472-8869
Facsimile: (671) 477-2511
E-mail: pciville@guamattorneys.com

*Attorneys for Defendants Keith Waibel,*
*The J.L.H. Trust, Roger Slater and Grant Thornton*

# IN THE UNITED STATES DISTRICT COURT OF GUAM

DAVID J. LUJAN,

        Plaintiff,

    v.

GIRARDI ǀ KEESE, a general partnership;
GRAHAM LIPPSMITH, an individual; the
J.L.H. TRUST, a Cook Islands Trust; and
KEITH A. WAIBEL, an individual and as
a Trustee of the J.L.H. Trust; ROGER
SLATER, an individual; GRANT
THORNTON, a Guam entity; and DOES 1
through 20,

        Defendants.

CIVIL CASE NO. 09-00017

**DEFENDANTS KEITH WAIBEL, THE
J.L.H. TRUST, ROGER SLATER, AND
GRANT THORNTON'S OBJECTION
TO MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION;
MEMORANDUM OF POINTS AND
AUTHORITIES**

## <u>OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants Keith Waibel, the J.L.H. Trust, Roger Slater, and Grant Thornton hereby submit their Objection to the Magistrate Judge's Report and Recommendation ("Objection"). Defendants Keith Waibel, the J.L.H. Trust, Roger Slater, and Grant Thornton bring this Objection on the grounds that the Magistrate Judge erred by concluding that Roger Slater and Grant Thornton (collectively the "Grant Thornton Defendants") were not fraudulently joined. Specifically, the Magistrate Judge erred by:

- Concluding that Plaintiff stated a cause of action for intentional interference with contract against the Grant Thornton Defendants;
- Concluding that Plaintiff stated a cause of action for aiding and abetting a breach of fiduciary duty against the Grant Thornton Defendants;
- Incorrectly applying the fraudulent joinder test set forth by *McCabe v. General Foods Corporation*, 811 F.2d 1336 (9th Cir. 1987); and
- Refusing to apply the pleading standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether Plaintiff sufficiently pled causes of action against the Grant Thornton Defendants.

This Objection is brought pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), and is based on this Objection and Memorandum of Points and Authorities in Support; Defendants Keith Waibel, the J.L.H. Trust, Roger Slater, and Grant Thornton's Opposition to Plaintiff's Motion to Remand; the arguments of Counsel

///
///
///

at the hearing; the papers and pleadings already on file in this Court; and such other matters as the Court may be pleased to receive.

Respectfully submitted this 1st day of September, 2009.

**CIVILLE & TANG, PLLC**

By: ___/s/ G. Patrick Civille_____
**G. PATRICK CIVILLE**
*Attorneys for Defendants Keith Waibel,*
*The J.L.H. Trust, Roger Slater and*
*Grant Thornton*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   RELEVANT BACKGROUND .......................................................... 2

      A.    Factual Background ................................................................. 2

      B.    Removal and Motion to Remand ............................................ 3

III.  THE MAGISTRATE JUDGE ERRED BY CONCLUDING THE GRANT
      THORNTON DEFENDANTS WERE PROPERLY JOINED .............................. 4

      A.    The Magistrate Judge Erred by Concluding that Plaintiff Stated a
            Claim Against the Grant Thornton Defendants for Intentional
            Interference with Contract ........................................................ 5

            1.    Only a Stranger to a Contract can be Liable for Interfering
                  with the Contract ............................................................ 5

            2.    The Magistrate Judge's Attempt to Split the Personality of
                  the Trustee Is Unsupported by Law ................................ 6

            3.    The Magistrate Judge's Treatment of the Trust as a Legal
                  Entity Is Contrary to Law ................................................ 9

            4.    Plaintiff's Breach of Contract Claim Precludes any Claim
                  that the Trust or Waibel Interfered with the Retainers .................. 10

      B.    The Magistrate Judge Erred by Concluding Plaintiff Stated a Claim
            Against the Grant Thornton Defendants for "Aiding and Abetting" ......... 11

      C.    The Magistrate Judge Misapplied the Fraudulent Joinder Standard
            From *McCabe v. General Foods Corporation* ........................................... 13

            1.    The Magistrate Judge Misapplied *McCabe* to the Claim for
                  Intentional Interference with Contract ............................................. 14

            2.    The Magistrate Judge Misappled *McCabe* to the Claim for
                  Aiding and Abetting ........................................................................ 15

      D.    The Magistrate Judge Erred by Applying the Incorrect Pleading
            Standard to Plaintiff's Complaint .................................................................. 16

i

| | | 1. | The Standard Set by the United States Supreme Court, and the Courts of Guam, Requires Factual Allegations ........................ 16 |

1.    The Standard Set by the United States Supreme Court, and the Courts of Guam, Requires Factual Allegations ........................ 16

2.    Plaintiff's Conclusory Allegations Are Insufficient ...................... 17

3.    No Factual Allegations Support the Intentional Interference with Contract Claim ......................................................................... 17

4.    No Factual Allegations Support the Aiding and Abetting Claim ............................................................................................. 18

IV.    THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S RECOMMENDATION TO REMAND THE ACTION ...................................... 19

A.    The Amount in Controversy Has Been Met ............................................... 19

B.    An Award of Fees Is Not Appropriate ....................................................... 20

V.    CONCLUSION ............................................................................................. 20

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                  Page(s)

*Abrego Abrego v. The Dow Chem. Co.,*
    443 F.3d 676 (9th Cir. 2006) .........................................................................20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    869 P.2d 454 (Cal. 1994)...................................................................6, 10, 15

*Bascon Corp. v. Lujan,*
    CV1398-94 (Super. Ct. Guam Aug. 17, 1998).......................................10

*Batt v. San Francisco,*
    65 Cal. Rptr.3d 716 (Ct. App. 2007) .....................................................11

*Bautista v. Torres,*
    CV0471-07 (Super. Ct. Guam Feb. 27, 2009)........................................17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................2, 16, 17, 19

*Casey v. U.S. Bank Nat'l Ass'n,*
    26 Cal. Rptr.3d 401 (Ct. App. 2005) .....................................................16

*Conrad Assocs. v. Hartford Accident & Indem. Co.,*
    994 F. Supp. 1196 (N.D. Cal. 1998)......................................................20

*DeHorney v. Bank of Am. Nat'l Trust and Sav. Ass'n,*
    879 F.2d 459 (9th Cir. 1989) ...................................................................8

*del Costello v. California,*
    185 Cal. Rptr. 582 (Ct. App. 1982) .......................................................12

*ESI, Inc. v. Coastal Power Production Co.,*
    995 F. Supp. 419 (S.D.N.Y. 1998) ........................................................10

*Galdjie v. Darwish,*
    7 Cal. Rptr. 3d 178 (Ct. App. 2003) ......................................................10

Case 1:09-cv-00017    Document 56    Filed 09/01/2009    Page 6 of 31

# TABLE OF AUTHORITIES
(continued)

<u>Cases</u>                                                                                              <u>Page(s)</u>

*Guam v. 1,348,474 Square Meters*,
    CV84-08 (Super. Ct. Guam Nov. 17, 2008)........................................................2, 17

*Guam Bar Ethics Committee v. Maquera*,
    2001 WL 1136164 (2001) .................................................................................11

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*,
    531 F.3d 767 (9th Cir. 2008) ............................................................................6

*Gulf States Steel, Inc. v. Lipton*,
    765 F. Supp. 696 (N.D. Ala. 1990).................................................................12

*Iqbal v. Ashcroft*,
    129 S.Ct. 1937 (2009).....................................................................................16

*In Ja Nahm v. J.H.K. Corp.*,
    CV 0981-06 (Super. Ct. Guam, Feb. 16, 2009)................................................7

*In re Colin*,
    35 B.R. 904 (Bankr. S.D.N.Y. 1983).................................................................7

*Kiyose v. Trs. of Ind. Univ.*,
    333 N.E.2d 886 (Ind. Ct. App. 1975) ..............................................................7

*Lincoln Property Co. v. Roche*,
    546 U.S. 81 (2005).........................................................................................19

*Loring v. United States*,
    80 F. Supp. 781 (D. Mass. 1948)......................................................................7

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005).......................................................................................20

*McCabe v. General Foods Corp.*,
    811 F.2d 1336 (9th Cir. 1987) ..............................................................2, 13, 14, 16

# TABLE OF AUTHORITIES

(continued)

Cases                                                           Page(s)

*Mintz v. Blue Cross of Calif.*,
     92 Cal. Rptr. 3d 422 (Ct. App. 2009) ................................................8, 9

*Moeller v. Superior Court*,
     947 P.2d 279 (Cal. 1997) .........................................................10

*Nelson v. Nelson*,
     205 P.3d 715 (Kan. 2009) .......................................................11

*Ness v. Commissioner*,
     954 F.2d 1495 (9th Cir. 1992) ...................................................5

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
     791 P.2d 587 (Cal. 1990) ..........................................................6

*Poulos v. Naas Foods, Inc.*,
     959 F.2d 69 (7th Cir. 1992) ......................................................5

*Preuc v. Continental Micronesia, Inc.*,
     CV0069-96 (Super. Ct. Guam Dec. 14, 1999) ......................................6

*Price v. Akaka*,
     928 F.2d 824 (9th Cir. 1991) .....................................................8

*Purvi Enters., LLC v. City of New York*,
     879 N.Y.S.2d 410 (N.Y. App. Div. 2009)..........................................15

*Ritchey v. Upjohn Drug Co.*,
     139 F. 3d 1313 (9th Cir. 1998) ...................................................5

*Sananap v. Cyfred, Ltd.*,
     CV1448-02 (Super. Ct. Guam Mar. 5, 2008) .......................................17

*Saunders v. Superior Court*,
     33 Cal. Rptr. 2d 438 (Ct. App. 1994) .............................................15

**TABLE OF AUTHORITIES**
(continued)

Cases                                                                          Page(s)

*Shoemaker v. Myers*,
    801 P.2d 1054 (1990) ...........................................................6, 8, 10

*Takagi & Assocs., Inc. v. Laguana*,
    CV 1601-01 (Super. Ct. Guam, Apr. 21, 2006).........................................7

*Taylor v. Mayo*,
    110 U.S. 330 (1884).......................................................................9

*TCW Special Credits v. Fishing Vessel Chloe Z*,
    2009 WL 799426 (D. Guam Mar. 24, 2009) .........................................5

*TNN Guam, Inc. v. Jale Mgmt. Info. Servs., Inc.*,
    CV0516-07 (Super. Ct. Guam June 26, 2008 and July 6, 2009).....................11, 18

*United States v. Griswold*,
    124 F.2d 599 (1st Cir. 1941)...........................................................7

*Vass v. Conron Bros. Co.*,
    59 F.2d 969 (2d Cir. 1932) ............................................................7

*Whiting v. Hudson Trust Co.*, .........................................................7
    138 N.E. 33 (N.Y. 1923)

*Ziegler v. Nickel*,
    75 Cal. Rptr. 2d 312 (Ct. App. 1998) ...............................................9

Statutes

18 Guam Code Ann. § 66101 ............................................................9

28 U.S.C. § 636(b)(1) ...................................................................5

Fed. R. Civ. P. 8(a) ....................................................................16

Fed. R. Civ. P. 17.......................................................................10

# TABLE OF AUTHORITIES
(continued)

<u>Statutes</u>

Fed. R. Civ.P. 72(b) ........................................................................... 4, 5

Guam R. Civ. P. 8(a) ............................................................................. 16

Guam R. Civ. P. 17 .............................................................................. 10

<u>Other Authorities</u>

76 Am. Jur. 2d *Trusts* § 3 (2009) ......................................................... 9

76 Am. Jur. 2d *Trusts* § 611 (2009) ..................................................... 9

G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 731 ............... 7, 9

Restatement (First) of Restitution § 160, cmt. a (1937) ..................... 12

Restatement (Third) of Trusts § 2 (2003) .............................................. 9

Restatement (Third) of Trusts § 3 (2003) .............................................. 9

Restatement (Third) of Trusts § 70 (2007) ............................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff David J. Lujan ("Plaintiff" or "Lujan") fraudulently joined Defendants Roger Slater and Grant Thornton (collectively the "Grant Thornton Defendants") in this action in an attempt to avoid federal diversity jurisdiction. Lujan's real dispute is straight-forward: he is an attorney who contends the trustee of the J.L.H. Trust (the "Trust") underpaid him millions of dollars under his retainer agreement. Instead of just alleging that cause of action, however, Lujan has improperly tried to convert his breach-of-contract claim into a tort and has dragged the Trust's accountants, the Grant Thornton Defendants, into this dispute without any legal or factual basis. The doctrine of "fraudulent joinder" prohibits these forum-shopping tactics and allows the Court to ignore improper defendants, like the Grant Thornton Defendants, when considering its subject matter jurisdiction. The Magistrate Judge's Report & Recommendation erroneously concludes there was no fraudulent joinder, and recommends the case be remanded, only because the Magistrate Judge erred, as a matter of law.

*First*, the Magistrate Judge erred by concluding that Plaintiff stated a claim against the Grant Thornton Defendants for intentional interference with contract. No court, in any jurisdiction, has previously held that a trustee (and his agents) can be liable in tort for interfering with a contract the trustee entered into, and performed, for the trust. The Magistrate Judge reached this conclusion only by misconstruing the law of trusts: (1) he treated the Trust as a legal entity, when it is not; and (2) he concluded that Waibel (in his individual capacity) could interfere with the conduct of Waibel (in his representative capacity), when all other authority says a plaintiff cannot split the personality of a trustee.

*Second*, as a matter of law, the Magistrate Judge erred by concluding that Plaintiff stated a claim against the Grant Thornton Defendants for "aiding and abetting." He reached this conclusion by making two errors of law: (1) failing to recognize that a constructive trust is a remedy, and not a cause of action; and (2) failing to recognize that a constructive trust does not create a fiduciary duty.

-1-

*Third*, the Magistrate Judge erred by misapplying the fraudulent joinder standard from *McCabe v. General Foods Corporation*, 811 F.2d 1336, 1339 (9th Cir. 1987). *McCabe* instructs courts to first look to the allegations in the Complaint to determine if the plaintiff has stated a claim. Here, by contrast, the Magistrate Judge ignored allegations in the Complaint and evaluated the causes of action based on arguments raised in Plaintiff's Reply that are not supported by the allegations in the Complaint or by any evidence.

*Finally*, the Magistrate Judge erred by declining to evaluate the Complaint under the standards enunciated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which has been adopted by the courts of Guam. Indeed, if this case is remanded to Judge Lamorena, he has already cited *Twombly* for the proposition that a "blanket assertion or a formulaic recitation of the elements of a cause of action" is insufficient. *Guam v. 1,348,474 Square Meters*, CV84-08, at 2 (Super. Ct. Guam Nov. 17, 2008) (Lamorena, J.).

When viewed through a proper legal spectrum, as a matter of law, Plaintiff cannot state a claim for intentional interference with contract or aiding and abetting against the Grant Thornton Defendants. The Magistrate Judge's conclusions must be rejected.

## II.     RELEVANT BACKGROUND

### A.     *Factual Background*

In 1995, multi-millionaire Larry L. Hillblom ("Hillblom") died, leaving behind an estate worth approximately $550 million and several pretermitted children including Junior Larry Hillbroom ("Junior"). (Compl., ¶¶ 14-15, Exh. A, ¶ 14.) Thereafter, it was established that Junior would receive 15% of Hillblom's estate. (*Id.*, ¶ 19, Exh. A, ¶ 20.) These funds were placed in the J.L.H. Trust (the "Trust") for Junior's benefit, and Defendant Keith Waibel ("Waibel") was appointed as a trustee of the Trust. (*Id.*, ¶ 23.)

Pursuant to a retainer agreement signed in 1998, Plaintiff and his co-counsel arranged to receive 38% of Junior's recovery from Hillblom's estate as compensation for their legal work. (*Id.*, ¶ 22.) Later, after Waibel was appointed as trustee, Plaintiff and his co-counsel entered into an amended retainer agreement with Waibel increasing their

-2-

attorneys' fees from 38% to 56% of Junior's inheritance (both retainers are referred to herein as the "Retainers"). (*Id.*, ¶ 27.)

On February 3, 2009, after Junior learned that his rightful inheritance shrank from approximately $90 million to $12 million due to the excessive attorneys' fees, Junior filed suit against Plaintiff and his-counsel, and Waibel, in the United States District Court of the Central District of California (the "California Action"). (*See* Compl., ¶¶ 37, 38, Exh. A.) An Order to Show Cause is currently pending regarding whether the California Action should be transferred to this Court.

On May 11, 2009, Plaintiff filed this action in Guam (the "Guam Action"), where it was assigned to Judge Lamorena, essentially denying the allegations in the California Action. Plaintiff's Complaint asserts a claim for defamation against the law firm Girardi Keese and its attorney Graham Lippsmith (collectively the "Girardi Defendants"), who represent Junior in the California Action. (*Id.*, ¶¶ 44-51.) Plaintiff also alleges that it is Waibel who is responsible for the Trust's loss of millions of dollars (*id.*, ¶¶ 31-36.), and that Waibel caused the Trust not to pay Lujan certain funds in the last year, thereby breaching the Retainers. (*Id.*, ¶ 40.)

The Complaint alleges the following factual allegations against the Grant Thornton Defendants: (1) that they are residents of Guam (Compl., ¶¶ 6-7); (2) that they were "agents, servants or employees" of the other defendants "acting within the course and scope of that agency, employment or representation" (*id.*, ¶ 10); and (3) that, with Waibel, the Grant Thornton Defendants schemed to blame Plaintiff for the state of the Trust, and created financial accountings of the Trust. (*Id.*, ¶ 36.) From these factual allegations, Plaintiff asserts claims for intentional interference with contract and for aiding and abetting against the Grant Thornton Defendants. (*Id.*, ¶¶ 52-56, 57-61.)

### B. Removal and Motion to Remand

On June 2, 2009, the Girardi Defendants (joined by the other Defendants) removed the Guam Action to this Court, asserting that the Grant Thornton Defendants were fraudulently joined in the action. (Doc. No. 1, ¶¶ 16-21.)

-3-

Plaintiff filed a Motion to Remand.[1] (Doc. No. 13, at 8-10.) In their Opposition to the Motion to Remand, Waibel, the Trust, and the Grant Thornton Defendants asserted that Plaintiff failed to state claims against the Grant Thornton Defendants, as a matter of law, because: (1) Plaintiff alleges that the Grant Thornton Defendants are agents of the Trust and Waibel as trustee, and in their capacity as agents, they cannot be held liable for intentional interference with a contract entered into by their principal; (2) the law only recognizes a claim for aiding and abetting a tort, which Plaintiff does not and cannot plead; and (3) the agent's immunity rule shields the Grant Thornton Defendants from liability for aiding and abetting the acts of the Trust or trustee. (*See* Doc. No. 22).

Lujan filed a Reply and asserted new theories and facts that were not contained in the Complaint, in an attempt to cure the patent deficiencies of his case.

The Magistrate Judge held oral argument on August 11, 2009 (*see* Doc. No. 52), and filed his Report and Recommendation on August 18, 2009, concluding that Plaintiff sufficiently pled claims against the Grant Thornton Defendants, and thus there was no fraudulently joinder. (Report & Recommendation ("R&R"), Doc. No. 51 at 11). Waibel, the J.L.H. Trust, and the Grant Thornton Defendants timely bring this Objection to the Report and Recommendation.

## III. THE MAGISTRATE JUDGE ERRED BY CONCLUDING THE GRANT THORNTON DEFENDANTS WERE PROPERLY JOINED

Under Federal Rule of Civil Procedure 72(b), a party may object to the recommendation of the magistrate judge on a dispositive matter assigned by the district judge. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court judge must make a *de novo* determination of any portion of the recommendation objected to, and may accept, reject, or modify in whole or in part the magistrate judge's recommendation. *TCW Special Credits v. Fishing Vessel Chloe Z*, 2009 WL 799426, at *1 (D. Guam Mar. 24,

---

[1] The Court referred the Motion to Remand to Magistrate Judge Manibusan on June 30, 2009. (*See* Doc. No. 17.) Still pending are motions to dismiss the Grant Thornton Defendants, Waibel, and the Trust. (*See* Doc. Nos. 27, 30.)

-4-

2009).  *De novo* review means the Court must consider the matter anew, the same as if no decision previously had been rendered.  *Ness v. Commissioner*, 954 F.2d 1495, 1497 (9th Cir. 1992).

It is well-established that "[f]raudulently joined defendants will not defeat removal on diversity grounds."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to settled rules of the state, the joinder of the resident defendant is fraudulent."  *Id.* (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  To determine whether a cause of action is stated—and if a defendant was fraudulently joined—the Court must look to the plaintiff's pleadings.  *Id.*; *see also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1991) (party asserting fraudulent joinder "need not negate any possible theory that [the plaintiff] might allege in the future.").

The Magistrate Judge's conclusion that the Grant Thornton Defendants were not fraudulently joined was erroneous and should be rejected by this Court.

### A. The Magistrate Judge Erred by Concluding that Plaintiff Stated a Claim Against the Grant Thornton Defendants for Intentional Interference with Contract

The Report and Recommendation appears to be the only authority, in any jurisdiction, to conclude that a trustee and his agents can be liable in tort for interfering with a contract the trustee entered into for the benefit of a trust.  Indeed, no other authority appears to treat as three entities:  (a) a trust; (b) an individual acting in his capacity as trustee; and (c) a trustee acting in his individual capacity.  By splitting the real-party-in-interest in three, the Magistrate Judge allowed Lujan to convert a simple breach of contract claim into a tort—and created a cause of action in Guam that has not been recognized anywhere else.

### 1. Only a Stranger to a Contract can be Liable for Interfering with the Contract

It is well-settled that only "a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract."  *Pacific Gas & Electric Co.*

-5-

*v. Bear Stearns & Co.*, 791 P.2d 587, 589 (Cal. 1990) (citing English law from 1853 for well-established principle that only a "stranger to a contract" may be liable for interference); *see also Preuc v. Continental Micronesia, Inc.*, CV0069-96 at 15 (Super. Ct. Guam. Dec. 14, 1999) (Unpingco, J.) (relying on *Pacific Gas & Electric*). Indeed, to state a claim for intentional interference with contract, one of the elements a plaintiff must plead is "a valid contract between plaintiff and a third party." (R&R, at 6:28-7:1); *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008).

Fundamental to this cause of action is the rule that a party to the contract cannot also be held liable in tort for interfering with the contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994) (action lies "against *noncontracting parties* who interfere with the performance of a contract"). Based on this reasoning, it is well-settled that an agent cannot be liable for interfering with the principal's contract, as the agent stands in place of the principal. *Shoemaker v. Myers*, 801 P.2d 1054, 1068-69 (Cal. 1990). Indeed, the Magistrate Judge implicitly recognized that if the Grant Thornton Defendants were agents of a party to the Retainers, they cannot be liable for interfering with those contracts. (R&R, 8:1-24.)

However, the Magistrate Judge's conclusion that the interference claim presents a question of fact – "whether the Guam Defendants were acting as agents for the Trust or for Mr. Waibel in his individual capacity"—is wrong as a matter of law. (R&R, 8:21-24.) The Grant Thornton Defendants were the agents of the real-party-in-interest to the Retainers and are not "third-parties" who can be liable for interfering with them.

### 2. The Magistrate Judge's Attempt to Split the Personality of the Trustee Is Unsupported by Law

Neither the Magistrate Judge nor Lujan cite to any authority—from any jurisdiction—even suggesting that an individual's conduct can be partitioned into actions as an individual and actions as a trustee, or that a trustee can interfere with his own performance of a contract.

-6-

In the rare cases where plaintiffs have attempted to parse an individual trustee's role by alleging the trustee acted in dual capacities, courts have consistently rejected the efforts to "split[ ] the personality of the trustee" in order to state a cognizable cause of action. *Loring v. United States*, 80 F. Supp. 781, 785 (D. Mass. 1948); *United States v. Griswold*, 124 F.2d 599, 601-02 (1st Cir. 1941) (rejecting that trustees acted in dual-capacity as corporate officers and employees, and declining "to take the step of splitting the personality of the trustees in this fashion"); *Vass v. Conron Bros. Co.*, 59 F.2d 969, 970 (2d Cir. 1932) (Hand, J.) (refusing to "recognize multiple personalities" and rejecting attempt to sue trustee as individual and trustee); *Kiyose v. Trs. of Ind. Univ.*, 333 N.E.2d 886, 890-91 (Ind. Ct. App. 1975) (dismissing claim that trustees acted in representative capacity when creating an expectancy of economic advantage, but in individual capacity to interfere with that expectancy); *Whiting v. Hudson Trust Co.*, 138 N.E. 33, 37-38 (N.Y. 1923) (Cardozo, J.) (rejecting that trustee held funds in his capacity as trustee and paid it to himself as an agent of another as "legal fiction"); *In re Colin*, 35 B.R. 904, 908 (Bankr. S.D.N.Y. 1983) (dismissing as "counter to the weight of the law" that stayed action was proper if brought against person as trustee rather than as an individual); G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 731 ("[C]ourts do not recognize the trustee, 'as trustee', as a legal entity or person, separate and distinct from the trustee in his other capacities.")[2]

Further, actions by Waibel while managing the Trust cannot be categorized as being performed in an *individual* capacity simply based on allegations that he acted for his own personal advantage. Actions by the trustee performed on behalf of the Trust are

_____

[2]  Plaintiff did not cite any authority recognizing that a trustee's role can be categorized as actions in an individual capacity versus a representative capacity.  The cases in the Reply only discuss general agency principles that are inapposite.  *See, e.g.*, *In Ja Nahm v. J.H.K. Corp.*, CV 0981-06 at 12-14 (Super. Ct. Guam, Feb. 16, 2009) (discussing agent acting outside scope of authority); *Takagi & Assocs., Inc. v. Laguana*, CV 1601-01 at 7 (Super. Ct. Guam, Apr. 21, 2006) (discussing agent acting within scope of authority).

necessarily in the trustee's *representative* capacity, regardless of the trustee's motivation or whether the actions were proper or improper. *See DeHorney v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 879 F.2d 459, 464 (9th Cir. 1989) (actions by employee remain in the scope of his employment even if motivated by ill-will or malice on his part); *Shoemaker*, 801 P.2d at 1068-69 (agents were within scope of their authority to terminate plaintiff, regardless of whether the actions were right or wrong).[3] Regardless of whether Plaintiff seeks to recover damages against Waibel in his individual or representative capacity, the decisions by Waibel to invest money for the Trust, hire accountants to create accountings for the Trust, to cover-up or expose Trust losses, or make or withhold payments from the Trust – rightly or wrongly – remain within the scope of his role as trustee, and are performed in his representative capacity, not in an individual capacity. (*See* Compl., ¶ 10) (alleging conduct was within scope of agency and was ratified by other defendants).

The Magistrate Judge's reliance on an exception to the "agent's immunity rule" to create a triable issue of fact regarding whether Waibel acted for his own personal advantage is misplaced. (R&R, 8:17-24.) The agent's immunity rule is inapplicable to claims for intentional interference with contract. *Mintz v. Blue Cross of California*, 92 Cal. Rptr. 3d 422, 430-31 (Ct. App. 2009). Thus, Defendants argued that the agent's immunity rule bars the aiding and abetting claim, not the intentional interference claim. (Doc. No. 22 at 12:22-13:3.). The Magistrate Judge's transposition of the argument created an issue where none exists—there is simply "no 'financial advantage' exception to the rule that a corporate agent cannot be liable for interfering with its principal's contract." *Mintz*, 92 Cal. Rptr. 3d at 431. Thus, regardless of whether the Complaint can be construed to allege that Waibel acted for his own personal advantage, it does not mean he could be liable in tort for

---

[3] In the context of a Section 1983 action, the Ninth Circuit explained that suing the "trustees of Hawaiian affairs" in their individual capacities, does not mean the trustees acted outside their official capacity. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1991) (explaining confusion between "the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged [wrongful conduct] occurred").

-8-

interfering with his own performance of the Retainers, or that Grant Thornton Defendants, as his agents, could be liable for interfering with the those contracts. As a matter of law, they cannot.

### 3. The Magistrate Judge's Treatment of the Trust as a Legal Entity Is Contrary to Law

In addition to erroneously treating Waibel as having a dual-personality, the Magistrate Judge's conclusion that the Grant Thornton Defendants could be agents of the Trust, and not for Waibel in his capacity as trustee for the Trust, contradicts the basic principle that *the trust is not a legal entity* that exists apart from its trustee. (*See* HT, 63:5-10) (treating trust as "a separate entity").

"A trust . . . is a fiduciary relationship with respect to property . . . subjecting the person who holds title to the property [the trustee] to duties to deal with it for the benefit of charity or for one or more persons [the beneficiaries]." Restatement (Third) of Trusts § 2 (2003). As the person who holds legal title to the property in trust, the trustee manages the trust estate in accordance with the trust agreement and fiduciary obligations owed to the beneficiaries. *Id.* at §§ 3 (2003), 70 (2007); 18 Guam Code Ann. § 66101. It is well-established that within the trust relationship, the trustee is the only legal actor, as the trust itself is a fiduciary relationship and not a legal entity, and the beneficiary lacks legal ownership from which a duty could arise. G. Bogert & G. Bogert, *Law of Trusts & Trustees* § 731 (2009); 76 Am. Jur. 2d *Trusts* §§ 3, 611 (2009) (same).

In this manner, a trust relationship varies from a corporation; whereas a corporation is a legal entity separate and distinct from its shareholders and officers, the trust is not separate from its trustee. *Ziegler v. Nickel*, 75 Cal. Rptr. 2d 312, 314 (Ct. App. 1998). The trust-trustee relationship also differs from a general principal-agency relationship. *Taylor v. Mayo*, 110 U.S. 330, 335 (1884) ("When an agent contracts in the name of the principal, the principal contracts, and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal."). Thus, the trustee enters into contracts on behalf of a trust, performs contracts on behalf of a trust, and if the contract is

-9-

breached, or a tort is committed against the trust, the trustee is the real-party-in-interest in the lawsuit. *Moeller v. Superior Court*, 947 P.2d 279, 283 n.3 (Cal. 1997); *Galdjie v. Darwish*, 7 Cal. Rptr. 3d 178, 187-88 (Ct. App. 2003); *see also* Fed. R. Civ. P. 17; Guam R. Civ. P. 17. Likewise, an agent hired to perform work for a trust is necessarily hired by the trustee. *See Galdjie*, 7 Cal. Rptr. 3d at 187-88 (trust only acts through trustee).

The Magistrate Judge erred by concluding that the Grant Thornton Defendants might be agents of the Trust, as opposed to agents of the trustee—there is no such distinction.

### 4. Plaintiff's Breach of Contract Claim Precludes any Claim that the Trust or Waibel Interfered with the Retainers

In his breach of contract cause of action, Plaintiff pleads that Waibel and the Trust are liable for breaching both the 1998 Retainer and the 1999 Retainer. (Compl., ¶¶ 68-72.) An essential element of these claims is that Waibel and the Trust are bound by both of those contracts. *See Bascon Corp. v. Lujan*, CV1398-94 at 4 (Super. Ct. Guam Aug. 17, 1998) (Unpingco, J.) (breach of contract claim requires "a valid contract between the parties"). As parties bound by the Retainers, neither Waibel nor the Trust can interfere with those contracts.[4] *See Applied Equip. Corp.*, 869 P.2d at 459 (only "*noncontracting parties*" are liable for "interfere with the performance of a contract").

Plaintiff's allegation that both the Trust and Waibel are bound by the Retainers makes immaterial any factual dispute regarding whether the Grant Thornton Defendants were acting as agents for the Trust or Waibel. Under either scenario the Grant Thornton Defendants were agents of a party to the contract. *See, e.g.*, *Shoemaker*, 801 P.2d at 1068-69. Therefore, as agents to the Trust and its trustee, the Grant Thornton Defendants cannot

---

[4] Plaintiff's allegations that Waibel is bound to both the 1998 retainer and the 1999 amendment to the retainer is an acknowledgment that he is the successor-in-interest to the obligations of the 1998 retainer. *See ESI, Inc. v. Coastal Power Production Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (successor-in-interest is not third-party who can interfere with contract)

-10-

be liable for intentional interference with an agreement entered into by Waibel on behalf of the Trust.

**B.** ***The Magistrate Judge Erred by Concluding Plaintiff Stated a Claim Against the Grant Thornton Defendants for "Aiding and Abetting"***

Although the Complaint and the Motion to Remand do not mention a "constructive trust" or a "fiduciary duty," the Magistrate Judge concluded that Lujan had stated a claim for aiding and abetting a breach of a fiduciary duty which arose from a constructive trust.[5] In so doing, the Magistrate Judge would have Guam be *the only jurisdiction* to hold that a client's alleged failure to pay his attorney fees is a breach of a fiduciary duty—a tort.

The Magistrate Judge made two fundamental errors of law that led him to this patently erroneous conclusion: (1) he did not recognize that a constructive trust is a remedy, and not a cause of action; and (2) he did not recognize that a constructive trust does not create a fiduciary duty. These errors led him to mistakenly conclude that Lujan had pled the first element of aiding and abetting—"the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff." (R&R, at 9:27-28) (citing *TNN Guam, Inc. v. Jale Mgmt. Info. Servs., Inc.*, CV0516-07 (Super. Ct. Guam June 26, 2008 and July 6, 2009) (Maraman, J.).

*First,* a constructive trust is not a cause of action, but a court-imposed remedy to compel a person wrongfully holding property to transfer the property to the rightful owner. *Batt v. San Francisco*, 155 Cal.App.4th 65, 82 (2007) (constructive trust not an independent cause of action); *Guam Bar Ethics Committee v. Maquera*, 2001 WL 1136164 at *8 (2001) (discussing constructive trust remedy). Indeed, it is "widely and uniformly accepted" that a constructive trust is an equitable remedy to prevent unjust enrichment and not a cause of action. *Nelson v. Nelson*, 205 P.3d 715, 723 (Kan. 2009) (collecting cases).

---

[5] Though the Magistrate Judge recognized that Defendants argued "there is no liability for aiding and abetting a breach of contract," he analyzed if "aiding and abetting a breach of fiduciary duty is . . . recognized under Guam law" (R&R, at 9:4-5, 12-13).

-11-

Neither the Magistrate Judge nor Lujan cited to any authority in support of the idea that a plaintiff can allege *breach* of a constructive trust, simply by saying that money was not paid under a contract. Rather, courts routinely dismiss causes of action for *establishment* of a constructive trust on the ground it is a remedy not a cause of action.[6] Here, by contrast, the Magistrate Judge concluded there was a claim not just for the *establishment* of a constructive trust, but for aiding and abetting a *breach of a constructive trust*. (R&R, 10:4-18.) No court—in any jurisdiction—has recognized a similar claim.

*Second*, the Magistrate inferred the existence of a fiduciary relationship which is nowhere recognized in the law. Even where the remedy is imposed, a constructive trust *does not create a fiduciary duty* between the parties. Restatement (First) of Restitution § 160, cmt. a (1937) ("A constructive trust, unlike an express trust, is not a fiduciary relation . . . ."); *del Costello v. California*, 185 Cal. Rptr. 582, 586 (Ct. App. 1982) ("An express trust . . . establishes a fiduciary duty. A constructive trust does not."). The Magistrate incorrectly reasoned that the Trust's receipt of tax refunds in which Lujan claimed an interest created a constructive trust, and this constructive trust created a fiduciary relationship owed by the Trust to Lujan. (*See* R&R 10:4-11.) This has never been the law.

Moreover, applying the law of any jurisdiction, Lujan, as the lawyer, owed a fiduciary duty to the Trust, as his client. The Trust did not owe a fiduciary duty to Lujan. Thus, application of Plaintiff's novel theory would create the illogical result that a client owes the attorney a fiduciary duty, turning the entire concept of fiduciary duties in an attorney-client relationship upside down.

Of course, without a fiduciary duty, there can be no aiding and abetting a breach of fiduciary duty and Plaintiff's aiding and abetting claim fails.

---

[6] *E.g.*, *Gulf States Steel, Inc. v. Lipton*, 765 F. Supp. 696, 704 (N.D. Ala. 1990) ("[T]he court's research has revealed no case in any jurisdiction that supports [the] argument that constructive trust constitutes a cause of action. . . .[T]he case law indicates unanimously that a constructive trust is a remedy.")

-12-

### C. The Magistrate Judge Misapplied the Fraudulent Joinder Standard From *McCabe v. General Foods Corporation*

Even after recognizing that *McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987), states the standard for fraudulent joinder, the Magistrate Judge ignored the analogies of that case to this one.  (*See* R&R at 5; Transcript of Hearing on Motion to Remand ("HT") at 10:22-11:1; 117:21-25-118:1.)

In *McCabe*, the plaintiff brought a wrongful discharge lawsuit against his former employer and two of its managers.  811 F.2d at 1337.  The plaintiff alleged that the managers were corporate employees whose wrongful conduct was ratified by the corporation.  *Id.*  The corporation then removed the action arguing that the managers were fraudulently joined to defeat diversity jurisdiction.  *Id.*  After the district court found that the managers had been fraudulently joined, the plaintiff attempted to amend his complaint, removing the allegation that the managers' acts were ratified, and adding allegations that the managers acted solely in their own self-interest.  *Id* at 1338.  The district court denied plaintiff's attempt to amend, concluding that it was offered only to destroy diversity, and imposed Rule 11 sanctions.  *Id.*

The Ninth Circuit affirmed.  *Id.* at 1339.  The court explained that when considering fraudulent joinder, courts must look to see if the plaintiff stated a cause of action in the pleadings, and may—but are not required to—consider factual evidence presented to show that joinder is fraudulent.  *Id.*

> *On the basis of the complaint alone*, the district court could rightly conclude that no cause of action had been stated against [the managers.]  Their actions, *according to the complaint*, had been in their managerial capacity.  Their actions, *according to the complaint*, had been ratified by [the corporation].  They were not alleged to have acted on their own initiative.  *Focusing on the original complaint, it was clear that no cause of action had been stated* against the managers, *as the complaint alleged that they had acted in their managerial capacity, and their actions had been ratified by* [the corporation].

*Id.* at 1339 (emphasis added).  What is *not* permitted in the court's consideration is an attempt by the plaintiff to reformulate the pleadings in hopes of resuscitating a failed cause

-13-

of action. Indeed, the *McCabe* court rejected the plaintiff's proffered amended pleadings and affirmed the award of sanctions for plaintiff's attempt to plead around the fraudulent joinder issue. *Id.* at 1340-41.

Here, the Magistrate Judge acknowledged he was bound by the *McCabe* standard (HT, 9:23-10:4; 10:22-23), however, his analysis erroneously went far beyond the allegations in the Complaint or any evidence before the court.

## 1. The Magistrate Judge Misapplied *McCabe* to the Claim for Intentional Interference with Contract

As in *McCabe*, Plaintiff alleged the role of the Grant Thornton Defendants: (1) they were agents of the Trust and Waibel who acted in the scope of their authority as agents; and (2) they acted "with the knowledge, consent, ratification, or approval" of the Trust and Waibel. (Compl., ¶ 10.) These agency/ratification allegations are indistinguishable from the allegations in *McCabe*, and, as in *McCabe*, the Grant Thornton Defendants were not required to introduce evidence to *prove* the agency allegations against them were true. (*But see* R&R at 8.)

Plaintiff injected for the first time in his Reply a newly-developed cause of action that the Grant Thornton Defendants were agents of Waibel in his *individual capacity*, and therefore can be held liable for interfering with a contract Waibel entered into in his *representative capacity* as trustee of the Trust (Reply at 6). However, nowhere in the Complaint does Plaintiff allege that Waibel hired the Grant Thornton Defendants for an individual purpose, such as to prepare his personal tax returns. Nor can Plaintiff's singular allegation that "Waibel is sued herein in his individual capacity and as a Trustee of the J.L.H. Trust" (Compl., ¶ 5) be stretched to mean that Grant Thornton Defendants were hired by Waibel in his individual capacity, and that they intentionally induced a breach of the Retainers that Waibel executed in his representative capacity. (*See* R&R at 8.) Not only is this theory wrong, as a matter of law (*see* supra pp. 5-10), this type of moving-target tactic was considered sanctionable in *McCabe* and should not be endorsed here.

-14-

## 2. The Magistrate Judge Misapplied *McCabe* to the Claim for Aiding and Abetting

The Magistrate Judge's analysis of the aiding and abetting claim is equally improper. The claim asserts that the Grant Thornton Defendants gave the Trust substantial assistance or encouragement to "refuse to perform the Retainers." (Compl., ¶ 59.) Although Plaintiff alleges that the Trust's refusal to perform the Retainers was a "breach of duty," (*id.*, ¶ 58), the only apparent duty alleged is the contractual duty to perform the Retainer. *Applied Equip. Corp. v. Litton Saudia Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an *independent duty arising from principles of tort law*.") (emphasis added). Plaintiff's pleading therefore amounts to no more than a claim that the Grant Thornton Defendants aided and abetted a breach of contract. While the law recognizes a cause of action for aiding and abetting a *tort*, there is no liability for aiding and abetting a breach of contract. *See Purvi Enters., LLC v. City of New York*, 879 N.Y.S.2d 410, 412 (N.Y. App. Div. 2009) (rejecting attempt to plead claim for aiding and abetting breach of contract); *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 446 (Ct. App. 1994) (describing claim for aiding and abetting an intentional tort); *see also* (Grant Thornton Defendants Reply In Support of Motion to Dismiss, at 5-7) (collecting cases).[7]

In his Reply, Plaintiff crafted a novel claim: that the Grant Thornton Defendants aided and abetted the Trust's breach of fiduciary duty that arose from a constructive trust that was created when the Trust and/or Waibel held attorneys' fees allegedly due to Plaintiff. (Reply at 7.) But that theory does not appear in the Complaint. Notably absent in the Complaint is any allegation of a constructive trust. Indeed, the Report and Recommendation recognizes that the allegations do not mention the existence of a "trust" (R&R at 10), let alone a constructive trust. Moreover, the Complaint is silent as to any

---

[7] Plaintiff's silence on the issue in his Reply and at oral argument implicitly concedes that there is no cause of action for aiding and abetting breach of contract. (*See* Grant Thornton Defendants Reply in Support of Motion to Dismiss, at 5-7) (Doc. No. 49.)

-15-

specific breach of fiduciary duty.  *See Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr.3d 401, 409 (Ct. App. 2005) (claim for breach of fiduciary duty requires the plaintiff to "identify precisely the breach of fiduciary duty at issue").  And, as discussed above (*see supra* pp. 10-12), the claim is wrong as a matter of law.

Because *McCabe* limits the analysis to what Plaintiff has pled in his Complaint, the Magistrate Judge's consideration of Plaintiff's novel theory—which is not raised  in the Complaint, and is completely unsupported by the law or any evidence—was erroneous.

### D.    The Magistrate Judge Erred by Applying the Incorrect Pleading Standard to Plaintiff's Complaint

Even assuming that Plaintiff could allege cognizable claims for intentional interference and for aiding and abetting, the Magistrate Judge's conclusions were still flawed because he misapplied the applicable pleading standards.

#### 1.    The Standard Set by the United States Supreme Court, and the Courts of Guam, Requires Factual Allegations

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified the pleading standards sufficient to state a claim and survive a motion to dismiss; the plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  550 U.S. 544, 555 (2007); *see also Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1953 (2009) (*Twombly* applies to all pleadings under FRCP 8).  The Supreme Court emphasized that pleadings must contain sufficient factual enhancement to make the plaintiff's entitlement to relief plausible.  *Twombly*, 550 U.S. at 556-557.  "[N]aked assertions" of legal conclusions without factual support is not sufficient.  *Id.* at 557.

The requirement for factual allegations to support legal conclusions applies equally under Guam law.  Rule 8(a) of the Guam Rules of Civil Procedure is patterned after and nearly identical to Federal Rule of Civil Procedure 8(a).  *See* Guam R. Civ. P. 8(a), Source (indicating that the source for GRCP 8 is FRCP 8 (2003)); *compare* Guam R. Civ. P. 8(a) *with* Fed. R. Civ. P. 8(a).

The Magistrate Judge recognized that the sufficiency of the pleadings is determined under the Guam Rules of Civil Procedure, as interpreted by the Supreme Court of Guam

-16-

and the Superior Court of Guam, but concluded that he did not have to follow the decisions of the United States Supreme Court. (R&R at 10; *see also* HT, 49:22-23, 59:7-22.) Indeed, despite *Twombly*'s instruction, the Magistrate Judge explained incorrectly that "conclusory allegations" are all that is required under "notice pleading[ ]." (HT, 49:22-23.) The Magistrate Judge ignored that Guam courts have applied the enhanced pleading requirements set forth by *Twombly* when determining the sufficiency of a complaint under Guam Rule of Civil Procedure 8(a). *See Sananap v. Cyfred, Ltd.*, CV1448-02, at 7-8 (Super. Ct. Guam Mar. 5, 2008) (Sukola, J.) (*Twombly* is the "governing case on pleadings"); *Bautista v. Torres*, CV0471-07, at 3 (Super. Ct. Guam Feb. 27, 2009) (Maraman, J.) (quoting *Twombly*); *Guam v. 1,348,474 Square Meters*, CV84-08, at 2 (Super. Ct. Guam Nov. 17, 2008) (Lamorena, J.) (citing *Twombly* for pleading standard).

### 2. Plaintiff's Conclusory Allegations Are Insufficient

Other than the preliminary allegations and the recitation of the elements, the Complaint contains only two factual allegations regarding the Grant Thornton Defendants' conduct, that they: (1) "developed a scheme" with Waibel "to blame Lujan for the poor state of the Trust", and (2) "created accountings." (Compl., ¶ 36.) These conclusory allegations, without more, are insufficient to support, much less create, a cause of action against them. *See Twombly*, 550 U.S. at 555.

Moreover, it is unprecedented to impose accountant liability based on the mere allegation that an accountant "created accountings." (Compl., ¶ 36.) Although Plaintiff now argues that the accountings were "false," (*see* HT at 96:3-10; Reply at 6), the Complaint contains no similar allegation. Indeed, there is no allegation that the accountings were inaccurate, misleading, or even produced negligently. The Complaint does not even allege that Plaintiff was harmed by the accountings. Plaintiff's allegations are simply insufficient to support any claim against the Grant Thornton Defendants.

### 3. No Factual Allegations Support the Intentional Interference with Contract Claim

Ultimately, the Magistrate Judge only required Plaintiff's pleading to provide a

-17-

recitation of the basic elements to the claims without any factual allegations to support those elements. (R&R at 6-7.) In particular, by concluding that paragraph 36 of the Complaint sufficiently establishes that the Grant Thornton Defendants intended to induce a breach or disruption of the contractual relationship – the Magistrate Judge used ellipses to attribute factual allegations to the Grant Thornton Defendants which do not apply to them. (*See* R&R at 7).

When paragraph 36 is read without the Magistrate Judge's ellipses, the paragraph describes only two actions by the Grant Thornton Defendants: (1) Waibel, the Grant Thornton Defendants and Does developed a scheme to blame Lujan for the state of the Trust; and (2) Waibel, the Grant Thornton Defendants, and Does created accountings. (Compl., ¶ 36). Thus, contrary to the Magistrate Judge's reading, it is not alleged that the Grant Thornton Defendants schemed with Waibel to cause the Trust not to pay Plaintiff. (*See* R&R at 7). Rather, "Waibel schemed with Does 1 through 20 to cause the Trust not to pay Lujan funds he was due under one or both of the Retainers." (Compl., ¶ 36:6-7). When read for what it alleges, Paragraph 36 does not contain facts sufficient to show the Grant Thornton Defendants intended to induce, or did induce, a breach of contract.

### 4. No Factual Allegations Support the Aiding and Abetting Claim

Likewise, the Magistrate Judge erroneously concluded that Plaintiff sufficiently pled each element for aiding and abetting a breach of fiduciary duty, as the allegations are no more than a recitation of each element. *See TNN Guam, Inc.*, CV0516-07 (discussing elements for claim).

According to the Magistrate Judge, paragraphs 40 and 60 of the Complaint establish that a fiduciary duty was breached by the primary tortfeasor. (*See* R&R at 9.) However, these paragraphs do not mention a constructive trust or a fiduciary duty. (*See* Compl., ¶¶ 40, 60.) Rather, paragraph 40 refers to a "breach of [the Retainers]" and the only reference to a primary tortfeasor in paragraph 60 states that "Defendants Waibel, Slater and Grant Thornton have committed tortuous [sic] acts in concert with the Trust or pursuant to a

-18-

common design with the Trust." There is simply no allegation in the Complaint of a "constructive trust" or a "fiduciary duty"—let alone that a fiduciary duty was breached.

*Twombly* clearly demands factual allegations to support legal conclusions, and Plaintiff has not supplied any. Plaintiff failed to meet this standard and the Magistrate Judge's conclusion that Plaintiff sufficiently pled causes of action against the Grant Thornton Defendants was erroneous.

## IV. THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S RECOMMENDATION TO REMAND THE ACTION

Once the Grant Thornton Defendants are properly recognized as fraudulently joined defendants, complete diversity of citizenship exists among the remaining parties. Moreover, the amount in controversy exceeds $75,000, thereby giving this Court subject matter jurisdiction. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Plaintiff's Motion to Remand should therefore be denied.

### A. The Amount in Controversy Has Been Met

The Report and Recommendation contains a section entitled "Amount in Controversy Does Not Exceed $75,000," yet within that section, the Magistrate Judge found it unnecessary to address the issue. (R&R, 14:8-22.) Indeed, the caption is misleading because the amount in controversy exceeds $75,000.

*Breach of contract, intentional interference with contract, and aiding and abetting.* Plaintiff seeks recovery based on the failure to pay Plaintiff his 26% share of "several million dollars" under the Retainers. (Compl., ¶¶ 27, 40.) At oral argument, the Magistrate Judge indicated his agreement that this amount clearly exceeds the jurisdictional limit. (HT, 31:2-16.)

*Contribution and indemnity.* Plaintiff seeks reimbursement from Waibel for any damages Plaintiff may incur in the California Action. (*Id.*, ¶¶ 62-67.) In the California Action, Junior alleges that Lujan's fraudulent and wrongful actions caused Junior's $90 million settlement to shrink to $12 million. (Compl., Exh. A ¶ 49.) Because Plaintiff faces

-19-

a multi-dollar judgment against him in the California Action, his contribution and indemnity claims also far exceed the $75,000 amount in controversy. (*See* HT, 31:21-23.)

*Defamation*. Plaintiff emphasizes the multi-million dollar legal practice that he has built and his exemplary reputation within the community, were established largely as a result of his legal representation of Junior, and were damaged by the alleged defamation. (*See* Compl., ¶¶ 13, 17, 27, 37.) The Magistrate Judge had no problem concluding that Plaintiff was seeking "[c]ertainly beyond" $75,000. (HT 23-24.) Moreover, Plaintiff also seeks punitive damages on his defamation claim, increasing the amount in controversy even more. *See Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).

The amount in controversy has been met for each claim pled by Plaintiff, and therefore remand is not appropriate for this case.[8]

### B. An Award of Fees Is Not Appropriate

Finally, if this Court remands the action, the Court should adopt the Magistrate Judge's recommendation to deny Plaintiff's request for fees and costs. As discussed above, Defendants' removal was based on objectively reasonable positions supported by ample legal authority. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (fees should be denied where "objectively reasonable" basis for removal exists). Moreover, Plaintiff did not request fees against Waibel, the Trust, or the Grant Thornton Defendants until his Reply and waived any request for fees. As such, an award of fees is not appropriate.

## V. CONCLUSION

For all the foregoing reasons, the Report and Recommendation should be rejected by this Court. The Motion to Remand should be denied.

---

[8] To the extent the amount in controversy has not been met, Defendants ask for limited discovery to establish the amounts at issue. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 691 (9th Cir. 2006).

-20-

Respectfully submitted this 1st day of September, 2009.

**CIVILLE & TANG, PLLC**


By: ___/s/ G. Patrick Civille___
   **G. PATRICK CIVILLE**
   *Attorneys For Defendants Keith Waibel,*
   *The J.L.H. Trust, Roger Slater and*
   *Grant Thornton*