1

2

3

4

5

6                        **IN THE  DISTRICT COURT OF GUAM**

7

8   DAVID J. LUJAN,

9                      Plaintiff,                    CIVIL CASE NO. 09-00017

10          vs.

11  GIRARDI|KEESE, a general partnership;           **OPINION AND ORDER RE: UNITED STATES**
    GRAHAM LIPPSMITH, an individual;               **MAGISTRATE JUDGE'S  REPORT AND**
12  the J.L.H. TRUST, a Cook Islands Trust;        **RECOMMENDATION CONCERNING PLAINTIFF'S**
    KEITH A. WAIBEL, an individual and as a        **MOTION TO REMAND CASE TO SUPERIOR**
13  Trustee of the J.L.H. TRUST;                   **COURT OF GUAM**
    ROGER SLATER, an individual;
14  GRANT THORNTON, a Guam entity; and
    DOES 1 through 20,
15
                    Defendants.
16

17

18                              **INTRODUCTION**

19          The matters before the court are the Defendants' Objections (Docket Nos. 54 and 56) to

20  the Magistrate Judge's Report and Recommendation (Docket No. 51) concerning the Plaintiff's

21  Motion to Remand (Docket No. 12).[1]  The Magistrate Judge recommends the undersigned (1)

22  **GRANT** the Plaintiff's Motion to Remand, (2) **DENY** the Plaintiff's request to impose attorney

23  fees and costs against the Defendants, and (3) **DECLINE TO TAKE FURTHER ACTION** on the

24  Girardi Defendants' multi-part motion on the basis that the court has no jurisdiction over the

25  action to grant the relief sought.

26  _____

27          [1] On September 1, 2009, the Defendants filed their respective Objections.  *See* Docket No.
    54 (Defendants Girard|Keese and Graham Lippsmith) and Docket No. 56 (Defendants Keith A.
28  Waibel, JHL Trust, Roger Slater and Grant Thornton).

Under 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the court may accept, reject, or modify in whole or in part the Magistrate Judge's recommendation, but must review *de novo* any part to which an objection has been filed. Upon full review of the entire record, the court finds the Report and Recommendation of the Magistrate Judge to be well founded in law. Accordingly, the Report and Recommendation is **ADOPTED AND AFFIRMED** and the Objections are **OVERRULED**.

### RELEVANT PRIOR PROCEEDINGS

On June 2, 2009, Defendants Girardi|Keese and Graham Lippsmith ("Girardi Defendants"), joined by Defendants Keith A. Waibel, the JLH Trust, Grant Thornton and Roger Slater ("Slater") (collectively the "Trust Defendants"), removed a Superior Court of Guam action to this court on the basis of diversity jurisdiction. *See* Docket Nos. 1 and 5. On June 8, 2009, the Girardi Defendants filed a Motion to Sever and Dismiss or, in the Alternative, Transfer or Stay Plaintiff's Defamation Claim. *See* Docket No. 7. On June 16, 2009, David J. Lujan ("the Plaintiff") filed a Motion to Remand arguing that removal was improper because there is not complete diversity of citizenship between the parties. *See* Docket Nos. 12 and 13. On June 30, 2009, the matters were referred to the Magistrate Judge. *See* Docket No. 17.

On July 13, 2009, the Girardi and Trust Defendants filed their respective oppositions to the Plaintiff's Motion to Remand. *See* Docket Nos. 20 and 22. On July 20, 2009, Plaintiff filed his reply briefs to the oppositions. *See* Docket Nos. 37 and 38. On August 11, 2009, the Magistrate Judge heard oral argument. Kathleen Fisher and Rodney Jacob appeared on behalf of the Plaintiff. Representing the Girardi Defendants was Joseph Razzano, and representing the Trust Defendants was G. Patrick Civille. On August 18, 2009, the Magistrate Judge issued the Report and Recommendation.[2] *See* Docket No. 51. Presently before the court are the Defendants' Objections (Docket Nos. 54 and 56) to the Magistrate Judge's Report and

---

[2] As noted herein, the Girardi Defendants filed a Motion to Sever and Dismiss or, in the Alternative, Transfer or Stay Plaintiff's Defamatory Claim. *See* Docket No. 7. Finding that the court was without jurisdiction, the Magistrate Judge declined to take action on this motion.

Recommendation.[3]  *See* Docket Nos. 54 and 56.  After reviewing the record and filings, the court overrules the Objections.

**BACKGROUND**

In 1995, Larry L. Hillbloom ("Hillbloom"), one of the founders and former owner of DHL Worldwide Express, died in an airplane crash, leaving behind an estate worth approximately $550 million and four  pretermitted children, including a son, Junior Larry Hillbroom ("Junior").  *See* Docket No. 1[4], Compl., ¶ 14, and Exh. A, ¶ 14-15.  At the time of Hillbloom's death, Junior was 11 years old.  *Id.,* ¶ 14.  Junior's guardian retained the Plaintiff to represent Junior's interests in the estate.  *Id.*

By 1997, it was settled that Junior would receive 15% of the Hillbloom estate.  *Id.* at ¶¶ 19 and 24.  In 1998, the Plaintiff executed a retainer agreement with Junior's guardians (the "1998 Retainer").  *Id.* at ¶ 22. This agreement provided that the Plaintiff and co-counsel would receive 38% of Junior's recovery from the estate for their legal work.[5]  *Id.*  In 1999, Junior's share of these funds were placed in the JLH Trust for Junior's benefit, and Defendant Keith A. Waibel ("Waibel") was named as the Trustee.  *Id.* at ¶ 23.  After the settlement of the estate and appointment of Waibel as Trustee, Plaintiff and co-counsel, Barry Israel ("Israel") and Joe Hill "("Hill") entered into an Amended Retainer Fee Agreement in 1999 (the "1999 Retainer") with the JLH Trust.  *Id.* at ¶ 27.  The JLH Trust agreed to increase the contingency fee of 38% to 56% in exchange for Plaintiff and co-counsel's continued representation.  *Id.*

---

[3]  The court notes that without waiting for a ruling on the Objections to the Report and Recommendation as to whether this court has diversity jurisdiction, the Trust Defendants, joined by the Girardi Defendants have since filed a Motion to Stay Or, in the Alternative, Transfer the Action. *See* Docket Nos. 62 and 63.

[4]  Attached to the Notice of Removal, Docket No. 1, is the Plaintiff's Complaint (hereinafter referred to as "Compl."), and attached thereto is the First Amended Complaint filed in the Central District of California, *Junior Larry Hillbroom v. David J. Lujan,* Civil Case No. 09-00841 (the "California Action") (hereinafter referred to as Exh. A).

[5]  Attorneys Lujan and Israel served as counsel for Junior in underlying guardianship and probate proceedings in Guam and in the Commonwealth of the Northern Mariana Islands.

On February 3, 2009, Junior, through his attorneys Defendants Graham Lippsmith ("Defendant Lippsmith") and the law firm of Giradi|Keese initiated an action entitled *Junior Larry Hillbroom v. David J. Lujan,* Civil Case No. 09-00841 in the Central District of California (the "California Action").[6]  *See* Docket No. 1, Compl., ¶ 37 and Exh. A.  The suit alleges claims against the Plaintiff, Israel, and Waibel for legal malpractice, negligence, breach of fiduciary duty, fraud, RICO violations, civil conspiracy, and violations of the California Business and Professional Code.  *Id.*, Exh. A.

Jurisdiction in the California Action was based on federal question jurisdiction and diversity jurisdiction.  *See* Docket No. 1, Exh. A.  The first amended complaint, filed April 22, 2009, alleged a broad conspiracy among the defendants to defraud Junior out of millions of dollars he received in connection with the settlement of his father's multi-million dollar estate.  *Id.* Junior asserted the Defendants fraudulently and secretly increased their retainer agreement from 38% to 56%.  *Id.*, Exh. A. ¶ 38.  Junior alleged that Waibel, in his capacity as Trustee, overpaid the Plaintiff and Israel millions of dollars in attorneys' fees and costs.  *Id.,* at ¶¶ 46–49

On May 11, 2009, the Plaintiff filed a Complaint in the Superior Court of Guam[7] (the "Complaint") against the Girardi and Trust Defendants.  In his Complaint, the Plaintiff asserted the following six causes of action:

| CLAIM | | DEFENDANT(S) |
|---|---|---|
| I | Defamation | Girardi|Keese and Lippsmith |
| II | Intentional Interference with Contract | Waibel, Slater, and Grant Thornton |
| III | Aiding and Abetting in Breach of Duty | Waibel, Slater, and Grant Thornton |
| IV | Contribution | Waibel |
| V | Equitable Indemnification | Waibel |
| VI | Breach of Contract | Waibel and JLH Trust |

[6] In the California Action, Junior is represented by the Girardi|Keese law firm, and Graham Lippsmith is an attorney employed at the law firm.

[7] *Lujan v. Girardi-Keese*, Superior Court of Guam Case No. CV-0776-09.

The defamation claim against the Girardi Defendants stems from statements Attorney Lippsmith made during an interview with KUAM, a local tv station, following the filing of the California Action. *See* Docket No. 1, Compl. Claims II through VI of the Complaint involve disputes arising from the Plaintiff's Retainer Agreements with the JLH Trust. *See id.*, Compl.

## STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (2005); *see Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991); *see also* Fed.R.Civ.P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed.R.Civ.P. 72(b)(3) (stating a district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions"). Accordingly, the court reviews the Report and Recommendation *de novo*.[8]

## LEGAL STANDARD FOR REMOVAL

Title 28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." In other words, the statute allows a defendant to remove a state court action to federal court only if the action could have originally been filed in federal court. *Id.* There are two bases upon which a district court may exercise removal jurisdiction: the existence of a federal question, *see* 28 U.S.C. § 1331, and complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332. Here, the removing Defendants have alleged only diversity of citizenship as a basis for jurisdiction. The

---

[8] The court conducted a full review of the entire record before it, including the transcript of the hearing before the Magistrate Judge (*see* Docket No. 52), the moving papers, the Magistrate Judge's Report and Recommendation (Docket No. 51), and the Defendants' Objections (Docket Nos. 54 and 56).

1  court can properly exercise jurisdiction on the basis of diversity if the citizenship of each

2  plaintiff is different than that of each defendant and the case involves an amount in controversy

3  greater than $75,000.  28 U.S.C. § 1332(a).

4         Federal courts are courts of limited jurisdiction and their authority is carefully

5  circumscribed by the Constitution and Congress.  *Alcala v. Holder*, 563 F.3d 1009, 1016 (9th

6  Cir. 2009).  Federal courts "are not free to expand [their] jurisdiction to review a decision

7  Congress has placed outside [their] purview."  *Id.*  For this reason, the removal statute must be

8  strictly construed.

9         The Ninth Circuit has held that "[t]he strong presumption against removal jurisdiction

10 means that the defendant always has the burden of establishing that removal is proper." *Gaus v.*

11 *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *Nishimoto v. Federman-Bachrach &*

12 *Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir.1990)).  The party that seeks to remain in federal court

13 has the burden of proof on a motion to remand to state court. *See Conrad Associates v. Hartford*

14 *Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).  "Due regard for the

15 rightful independence of state governments, which should actuate federal courts, requires that

16 they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has

17 defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292

18 U.S. 263, 270 (1934)).  Since the removal statute is strictly construed against removal

19 jurisdiction, the court must reject federal jurisdiction if there is any doubt as to whether removal

20 was proper. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)

21 ("Where doubt regarding the right to removal exists, a case should be remanded to state court.").

22                    LEGAL STANDARD FOR MOTION TO REMAND

23         In this case, the Plaintiff moves to remand this case on the ground that there is no

24 diversity jurisdiction.  As noted, "[w]hen an action is removed based on diversity, complete

25 diversity must exist at removal."  *Gould v. Mut. Life Ins. Co.*, 790 F.2d 769, 773 (9th Cir. 1986).

26 Ordinarily, the court relies only on the face of the complaint to determine if diversity is present.

27 *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  Here the existence of

28

diversity jurisdiction certainly does not appear on the face of the Complaint since non-diverse Defendants– Slater and Grant Thornton (the "Guam Defendants") have been joined in the action. *See* Docket No. 1, Compl. at ¶¶s 1, 6 & 7.[9]

All Defendants concede that on the face of the Complaint, diversity jurisdiction is lacking. However, they argue that the court should disregard the Guam Defendants for jurisdictional purposes because they were "fraudulently joined" or are "sham defendants." *See* Docket No. 1. In addition, the Girardi Defendants separately argue that they were "procedurally misjoined"– a doctrine adopted by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Specifically, the *Tapscott* fraudulent joinder exception applies where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Because there were Objections to the Magistrate Judge's findings as to the applicability of each theory, the court will separately analyze each one herein.

**DISCUSSION**

**I.    Fraudulent Joinder**

While federal jurisdiction requires complete diversity, the Ninth Circuit recognizes an exception to that requirement. An action may be removable if joinder of the non-diverse parties

---

[9] According to the Complaint, the citizenship of the remaining defendants is as follows:

- the Girardi law firm was formed under the laws of California, with its principal place of business in California;

- Grant Lippsmith is a citizen of California;

- the JLH Trust is organized and registered under the law of the Cook Islands; and

- Defendant Waibel is a resident of California.

is fraudulent. "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey*, 139 F.3d at 1318. The Ninth Circuit has explained that "[f]raudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

In determining whether a defendant was joined fraudulently, "the courts must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute v. Roadway Package Sys.*, 141 F. Supp.2d 1005, 1008 (N.D. Cal. 2001)(quotation marks and citation omitted). If "there is any possibility that a claim can be stated against the allegedly 'sham' defendant," then remand is required. *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp.2d 983, 995 (D. Nev. 2005). Stated another way, "the defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). Obviously, this standard is more lenient than the standard for motions to dismiss. *See Knutson,* 358 F. Supp.2d at 995. And "a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge. *Id*. at 993. "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). The Ninth Circuit has made clear that joinder is not fraudulent if the plaintiff has stated a colorable claim against the non-diverse defendant.

The Girardi and Trust Defendants argue that the joinder of the Guam Defendants is fraudulent because each of the claims brought against them is so unsubstantiated that no true cause of action exists as pertaining to them. Although it is possible to create diversity by proving that there is no viable claim against the Guam Defendants, as discussed above, the Girardi and Trust  Defendants have the burden of proof in this regard. The court now turns its attention to whether they have met this heavy burden.

**A. Whether Plaintiff has Asserted Causes of Action Cognizable Under Guam Law Against Guam Defendants**

The Plaintiff asserts two causes of action (Claims II and III of the Complaint) against the Guam Defendants: intentional interference with contract and aiding and abetting. *See* Docket No. 1, Compl. at ¶¶52-61. The Girardi and Trust Defendants must establish that, under settled Guam law, it is not possible to bring these claims against the Guam Defendants.

In a case in which the court's diversity jurisdiction is invoked, the court must apply Guam law with respect to matters of substantive law, while applying federal law as to matters of procedure. *Gasperini v. Ctr. for Humanties, Inc.*, 518 U.S. 415, 427 (1996) "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)). "'[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2007) (quoting *Gasperini*., 518 U.S. at 427).

**1. *Iqbal* and *Twombly* are Irrelevant to the Issues before the Court.**

The Girardi and Trust Defendants object to the Magistrate Judge's reliance upon Guam's notice pleading standard. They argue that the Magistrate Judge instead should have applied the heightened pleading standard as set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and further explained in *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009). In those cases, the Court addressed the pleading standard as applied to Rule 12(b)(6) motions to dismiss. The Supreme Court in *Twombly* stated that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain

factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Court interpreted *Twombly* as raising the pleading standard for all actions. The Court in *Iqbal* extended the reach of *Twombly* and instructed that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

This court notes that the Ninth Circuit has not discussed the applicability of the pleading standard of *Twombly* and *Iqbal* in the context of a motion to remand. Without more specific direction from the circuit on this matter, it seems the standard this court must apply in a motion to remand differs somewhat from the standard applied in a Rule 12(b)(6) motion to dismiss. The standard to be applied is something akin to a 12(b)(6) type analysis but not as stringent. *See Tracey v. American Family Mut. Ins. Co.*, No. 2:09-CV-01257-RCJ-PAL, 2009 WL 3754209, *2 (D. Nev. Nov. 5, 2009); *see also Lovell v. United Airlines, Inc.*, No. CIV. 09-00146 ACK-LE, 2009 WL 3172729 *3 (D. Haw. Oct. 2,2009) ("In evaluating the issue of fraudulent joinder, 'the court may conduct a Rule 12(b)(6) type of analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'") (citations omitted); *see also Briano v. Conseco Life Ins. Co.*, 126 F. Supp.2d 1293, 1299 n.5 (C.D. Cal. 2000)("[The] inquiry into validity of complaint is more searching under Fed.R.Civ.P.

///

///

Page 10 of  26

1  12(b)(6) than when party claims fraudulent joinder.") (quoting *Batoff v. State Farms Inc. Co.*,

2  977 F.2d 848, 852 (3d Cir. 1992).[10]

3      The Plaintiff correctly notes that the Magistrate Judge was obligated to evaluate the

4  Motion to Remand under the following standard: "[t]he standard is not whether plaintiffs will

5  actually or even probably prevail on the merits, but whether there is a possibility that they may

6  do so." *See* Docket No. 51, Report and Recommendation 6:6-7 (*citing Lieberman v. Meshkin,*

7  *Mazandarani,* 1996 WL 732506 at *3 (N.D. Cal. Dec. 11, 1996).  When a removing defendant

8  alleges the district court has diversity jurisdiction on the basis of fraudulent joinder, "the federal

9  court first adopts a strict presumption against removal, and then asks whether there is 'any

10 chance' that a state court would find a viable cause of action against a resident defendant."

11 *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1426 (9th Cir.1984) superseded by

12 statute on other grounds by *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.

13 2001); *see also Davis v. Prentiss Properties Ltd. Inc.,* 66 F. Supp.2d 1112, 1114 (C.D. Cal.

14 1999)("If a court were to apply the standard of Rule 12(b)(6) to the diversity-defeating claim, the

15 court would be ignoring the fact that it has no jurisdiction over the claim.").  The defendants

16 essentially request this court ignore this standard in favor of the *Iqbal* standard used in a motion

17 to dismiss.  However, as discussed previously, the court finds that that is not what is required by

18 the Ninth Circuit.

19     Accordingly, the proper analysis in this case is to identify whether, on the Complaint

20 itself, regardless of any potential defenses, the Plaintiff could bring the claims asserted against

21

22     [10]  While the court agrees with the Defendants that the Plaintiff's Complaint is sparse,
perhaps so much so that he may have failed to state a cognizable claim against the Guam Defendants
23 under the federal pleading standard articulated by the Supreme Court in *Iqbal*, the substantive merits
of his claims are not at issue in the pending motion.  Rather the issue of whether this court has
24 jurisdiction pursuant to diversity jurisdiction is a preliminary determination that is wholly separate
from an evaluation of the merits of the claims asserted. *See Quackenbush v. Allstate Ins. Co.*, 517
25 U.S. 706, 707 (1996) (characterizing the issue of jurisdiction as "separate from the merits"); *In re
Briscoe*, 448 F.3d 201, 218 (3d Cir.2006) ("because it is possible that a party is not fraudulently
26 joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon
which relief may be granted, [a] district court ... err[s] in converting its jurisdictional inquiry into
27 a motion to dismiss.") (quotations omitted).

28

the Guam Defendants. The court must remand if the Defendants fail to meet their heavy burden in showing that under settled Guam law the Plaintiff cannot state a cause of action against them in a Guam court. *McCabe* 811 F.2d at 1339. "[W]here it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court." *Albi v. Street & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944). The motive for the joinder is immaterial and a merely defective statement does not warrant removal under fraudulent joinder. *Id.* Only where there is no reasonable ground for supposing that a plaintiff has a cause of action will the court find that there is fraudulent joinder. *Id.* In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.

With these principles in mind, the court will now evaluate the validity of Plaintiff's claims.

### 2.    Intentional Interference with Contract

The Plaintiff alleges in the second cause of action of the Complaint that Waibel and the Guam Defendants intentionally interfered with his right to receive payment under the Retainers. To state a claim for intentional interference with contract under Guam law, a plaintiff must allege:

(1) the existence of a valid contract between the plaintiff and a third party,

(2) the defendant's knowledge of that contract,

(3) an act by the defendant intended to induce a breach or disruption of the contractual relationship,

(4) an actual breach or disruption of the contract, and

(5) resulting damages.

*See Brown v. Eastman Kodak Co.*, CV1890-92 (Super. Ct. Guam Dec. 30, 2005) (Bordallo) at 6; *Preuc v. Continental Micronesia, Inc.*, CV 0069-96 (Super. Ct. Guam Dec. 14, 1999) (Unpingco) at 15; *JWS Refrigeration and Air Conditioning, Ltd. v. Engineering Mgmt. and Consulting Co., Inc.*, CV 1133-87 (Super. Ct. Guam Dec. 22, 1988) (Diaz) at 8. After reviewing the Plaintiff's Complaint, the Magistrate Judge found that the Plaintiff had alleged each of these elements. Both the Girardi and Trust Defendants claim the Magistrate Judge's finding in this regard was in

1   error.  The court will address each objection in turn.

2                            **a.    Sufficient facts alleged**

3          In their Objections, the Girardi Defendants assert the Magistrate Judge erred when he

4   found there were sufficient facts supporting the claim.  *See* Docket No. 54.  They assert that the

5   elements for tortious intentional interference are unsupported by the factual allegations leveled at

6   the Guam Defendants.  This court disagrees and overrules the Objection.  The Magistrate Judge

7   did not err in finding sufficient facts.  The Complaint alleges the following facts that connect the

8   Guam Defendants to the claim.

9          Concerning the first element of a valid contract, the Plaintiff describes the 1998 Retainer

10  Agreement he entered into with Naoko Imeong, Junior's co-guardian and co-guardian *ad litem*.

11  *See* Docket No. 1, Compl., ¶22. Pursuant to that agreement, the Plaintiff and co-counsel would

12  receive 38% of Junior's recovery from his father's estate. *Id.*  Additionally, the Plaintiff

13  discusses the 1999 Retainer between the Plaintiff and the JLH Trust under which the

14  contingency fee was increased to 56%. *Id.* at ¶27.

15         As to the second element of the Defendant's knowledge, in ¶53 of the Complaint, the

16  Plaintiff asserts that Waibel and the Guam Defendants were aware of the existence of the

17  Retainer agreements.  *See* Docket No. 1, Compl. at ¶53.

18         The third element is satisfied by ¶36 which alleges that the JLH Trust, Waibel and the

19  Guam Defendants developed a scheme to blame the Plaintiff for the poor state of the JLH Trust

20  and that the Guam Defendants created accountings to try to get the Plaintiff to forego his right to

21  receive payment due under the Retainers and to coerce him to pay millions of dollars to the JLH

22  Trust.  *See* Docket No. 1, Compl. at ¶36.

23         The fourth element of an actual breach of contract is satisfied by ¶40 wherein the

24  Plaintiff asserts that the JLH Trust received a substantial amount of money in federal tax refunds

25  and, under the terms of the Retainers, he was to receive a percentage of these funds. The Plaintiff

26  claims that Waibel caused the JLH Trust not to pay the Plaintiff his share of several million

27  dollars. *See* Docket No. 1, Compl. at ¶40.

28

Lastly, ¶¶36, 40 and 55 satisfy the fifth element's required showing of resulting damages. *See* Docket No. 1, Compl. at ¶¶36, 40 and 55.

These allegations, judged by the deferential standard the court must apply on a motion to remand, are sufficient to constitute at least a colorable claim under Guam law. They aver that the Guam Defendants were aware of the Retainers, and finally that they were not parties to those agreements, that they intentionally induced the JLH Trust to breach those Retainers; that the JLH Trust did breach the Retainers. The Plaintiff further alleges that as a result of these actions he suffered damages, thus entitling him to punitive damages. Docket No. 1, Compl. ¶¶ 52-56, 69-72.

### b.    Guam Defendants as Agents

The Magistrate Judge found that whether the Guam Defendants were acting as agents for the JLH Trust or for Waibel in his individual capacity is a question of fact best left for the Superior Court to decide. The Trust Defendants object to the Magistrate Judge's conclusion in this regard. Specifically, they argue that there is but one entity– the JLH Trust, and the Trustee– and they do not stand separate from one another. Thus, the Guam Defendants could not have interfered with the Retainers because they "were the agents of the real-party-in-interest to the Retainers and are not 'third-parties' who can be liable for interfering with them." *See* Docket No. 56, Objections, p. 6:20-21.

Plaintiff, on the other hand, contends that the law is unsettled in terms of whether trusts can be considered as distinct legal entities.

> "Increasingly, modern common-law and statutory concepts and terminology tacitly recognize the trust as a legal "entity," consisting of the trust estate and the associated fiduciary relation between the trustee and the beneficiaries. This is increasingly and appropriately reflected both in language (referring, for example, to the duties or liability of a trustee to "the trust") and in doctrine, especially in distinguishing between the trustee personally or as an individual and the trustee in a fiduciary or representative capacity."

RESTATEMENT (THIRD) OF TRUSTS § 2 (2003).

In fact, there is authority in Guam law which suggests that the Guam Defendants could be liable if they are found to have been acting as agents of Waibel in his individual capacity and not as agents of Waibel in his capacity of Trustee. The Superior Court of Guam has recognized

that "the agent immunity rule does not preclude the subjection of agents to conspiracy liability for conduct which the agents carry out as individuals for their individual advantage and not solely on behalf of the principal." *Calvo v. Guam Medical Plaza, L.P.*, CV1289-02 (Super. Ct. Guam Aug. 19, 2005) (Bordallo) at 4 (internal quotations omitted). Whether the Guam Defendants were acting as agents for the JLH Trust or for Waibel in his individual capacity is a question of fact for a jury to decide. *See Armored Express Serv. Inc. v. The Baldwin Corp*, CV1601-01 (Super. Ct. Guam Apr. 21, 2004) (Lamorena) at 5.

The Plaintiff also points out that the Girardi and Trust Defendants have not filed any declaration or submitted facts which prove the existence of an agency relationship with the JLH Trust to counter the Plaintiff's contentions that the Guam Defendants were agents of Waibel in his individual capacity. Neither have they cited to any Guam or Ninth Circuit case or statute that supports their position. The Magistrate Judge found that the Guam Defendants' assertion of agent immunity goes to the merits of the action and is better propounded as a defense to an otherwise valid cause of action. This court agrees.

There appears to be no basis to conclude that, under settled Guam law, the Plaintiff is absolutely precluded from asserting a tortious interference claim against the Guam Defendants. The Trust Defendants have failed to satisfy their heavy burden to prove there is no possibility that the Plaintiff will be able to prevail on the merits of his claims. *See In re Briscoe*, 448 F.3d at 218 (The claim must be "wholly insubstantial and frivolous" to be considered fraudulent.). Accordingly, the Trust Defendants' Objection is overruled.

### 3.    Aiding and Abetting a Breach

In the third cause of action the Plaintiff alleges that the Trust Defendants are guilty of aiding and abetting the JLH Trust's refusal to pay amounts due and owing the Plaintiff under the Retainers. *See* Docket No. 1, Compl. ¶¶ 57-61. The Magistrate Judge determined that the Plaintiff was alleging a cause of action for aiding and abetting a breach of fiduciary duty. In their Objections, the Girardi and Trust Defendants assert the Magistrate Judge erred when he made such a finding. They contend that there is no language in the Complaint suggesting the

Plaintiff is alleging a cause of action for aiding and abetting a breach of fiduciary duty. They argue the Plaintiff's cause of action is one for aiding and abetting a breach of contract– a claim which is not viable. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 n.6 (7th Cir. 2000)(holding that § 876 of the Restatement (Second) of Torts, which sets out cause of action for, among things, providing substantial assistance or encouragement to another's tortious acts. Because a breach of contract is not a tortious act, § 876 does not support class counsel's aiding and abetting claim . . ..").

While the Plaintiff is correct that there is no language indicating the cause of action is one for aiding and abetting a breach of fiduciary duty, it is likewise true that there is no language in the Complaint that precludes the Plaintiff from alleging such an action. As the Magistrate Judge understood "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Plute*, 141 F. Supp.2d at 1008 (citation omitted); *see also Little v. Purdue Pharma, LP*, 227 F. Supp.2d 838, 849 (S.D.Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts.").

With that standard in mind, the Magistrate Judge looked to Guam law in laying out the elements of a cause of action for aiding and abetting a breach of fiduciary duty. *See TNN Guam, Inc. dba Hotel Nikko Guam v. Jale Management Information Services, Inc. dba Information and Data Systems,* CV0516-07 (Super. Ct. Guam June 26, 2008 and July 6, 2009) (Maraman).[11]

---

[11] This decision recognized for the first time on Guam the tort of aiding and abetting a breach of fiduciary duty. The Plaintiff requests the court to take judicial notice (*see* Docket No. 66) of the Guam Supreme Court's Order, *Bank of Guam v. TNN Guam, Inc.,* CVA-09020 (Nov. 12, 2009). Pursuant to Rule 201 of the Federal Rules of Evidence the court grants the request. The court notes that the Supreme Court previously had agreed to hear an interlocutory appeal in order to determine whether the new tort of aiding and abetting a breach of fiduciary duty is an actionable tort under Guam law. *See* Docket No. 57, attachment thereto. However, in its November 12, 2009 Order the Supreme Court dismissed the interlocutory appeal based on the parties' agreement to a voluntary dismissal. *See* Docket No. 66, Exh. A attached thereto. The dismissal therefore leaves the cause of action for aiding and abetting a breach of fiduciary duty unsettled.

According to the *TNN Guam* decision, the elements of the common law tort of aiding and abetting breach of fiduciary duty are: (1) the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach, i.e., the specific primary wrong; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffers damages proximately caused by the breach.

The Magistrate Judge also found that the Plaintiff had pled sufficient facts in order for the court to infer that the Trust Defendants owed him a fiduciary duty. *See* Docket No. 51, Report and Recommendation 10:4-16. The existence of the first element may be found in ¶40 of the Complaint. Therein, the Plaintiff alleges entitlement to a share of a substantial amount of money the JLH Trust received in federal tax refunds and that Waibel caused the JLH Trust not to pay the Plaintiff his share of said funds as required by the terms of the Retainer Agreements. *See* Docket No. 1, Compl. ¶40. While these allegations do not specifically mention the existence of a "trust," when read liberally this paragraph alleges the existence of a constructive trust over the funds resulting from Defendant Waibel's actions in causing the JLH Trust not to pay the Plaintiff his rightful share. Additionally, assertions regarding the breach of fiduciary duty can also be found in ¶60 of the Complaint. *See* Docket No. 1, Compl. ¶60.

As to the second element requiring actual knowledge of the breach by the aider-abettor, the court finds this element satisfied by the assertion in ¶58 that the Trust Defendants knew that the JLH Trust's refusal to perform under the terms of the Retainers constituted a breach of duty to the Plaintiff. *See* Docket No. 1, Compl. ¶58.

The third element requiring substantial assistance is sufficiently pled in ¶59, and the fourth element – damages – can be found in ¶¶40 and 61. *See* Docket No. 1, Compl. ¶¶40, 59 and 61.

This court agrees with the Magistrate Judge's finding that the Complaint sufficiently states a cause of action against the Guam Defendants for aiding and abetting a breach of fiduciary. Accordingly, the Objections are overruled.

Even if this court agreed with the Defendants that the Plaintiff's cause of action is one for

aiding and abetting a breach of contract, this court would still be unable to find the Plaintiff fraudulently joined the Guam Defendants. As noted, the Defendants contend that the claim is not viable. However, it seems that such a cause of action is recognized elsewhere. *See, e.g. Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Services, Inc.*, No. 3:07-CV-1985-B, 2009 WL 1174641 at *11 (N.D. Tex. 2009)("this case does not persuade the Court that the Plaintiff has failed to state a claim by alleging Defendants 'encouraged, aided and/or abetted' U.S. Auto's breach of contract.").

It is unclear whether Guam law will recognize such a claim. However, it is not for this court to speculate as to how the local courts will rule on the matter. It is a matter that should be left to the local courts to decide. *See Cava v. NetVersant-Nat, Inc.*, No. C 07-3224 SBA, 2007 WL 4326754 at *4 (N.D. Cal. 2007) ("the Court may not make final determinations with regard to questions of state law that are not well-settled.") *see also Knutson v. Allis-Chalmers Corp.*, 358 F. Supp.2d 983, 996, n. 10 (D. Nev. 2005) ("Federal district courts are not entitled to determine uncertain issues of law in order to ascertain whether there has been a fraudulent joinder, as those issues must be determined in state court."); *see also Macey v. Allstate Prop. and Cas. Ins. Co.*, 220 F. Supp.2d 1116, 1117. (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants the court must remand.").

For purposes of remand, it is important for this court to note only that it remains an unsettled area of Guam law. To defeat remand, defendants must establish that it "is obvious according to [the] settled [law] of the state" that the Plaintiff has failed to state a cause of action against the Defendants. *See McCabe*, 811 F.2d at 1339. "If there is doubt as to whether plaintiff has stated a cause of action, the joinder is not fraudulent, and the case should be remanded." *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir.1962). Accordingly, remand is required.

### 4.     The Guam Defendants Are Not "Sham Defendants"

When read as a whole and not in isolation, the allegations in the Complaint sufficiently

allege causes of action against the Guam Defendants under the second and third claims. The court cannot say that the Plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state . . .." *McCabe*, 811 F.2d at 1339. The fact that the party may lose or even the fact that the party will probably lose does not affect the party's right to present its claim, make its arguments, and receive a ruling from a court with proper jurisdiction. Thus, if a diversity-defeating claim is not frivolous, the plaintiff has the right to have it considered by the state court in which it was filed. *See Salveson*, 731 F.2d at 1426 (The Plaintiff has the right to frame his complaint so as to "pitch his claim in state court."); *see also Davis*, 66 F. Supp.2d at 1114 ("The Court must therefore walk a very fine line; it must consider the merits of a matter without assuming jurisdiction over it.").

The court finds that the Guam Defendants are not "sham defendants." Because the removal statute is strictly construed against removal jurisdiction, even when a cause of action is inartfully or ambiguously pled, the court finds the Girardi and Trust Defendants have failed to establish that the second and third causes of action of the Complaint are "obviously" precluded by "settled Guam law." *Alderman v. Pitney Bowes Mgmt. Servs.*, 191 F. Supp.2d 1113, 1116 (N.D. Cal.2002) ("[D]oubt arising from merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand."); *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, (5th Cir. 1992)(All ambiguities in state law must be resolved in the plaintiff's favor.). Therefore, the court rejects the Girardi and Trust Defendants' argument that the joinder of the Guam Defendants should be ignored for the purpose of determining whether diversity jurisdiction exists.

## II.    Magistrate Judge Correctly Applied *McCabe*

The Trust Defendants fault the Magistrate Judge's application of *McCabe*. In *McCabe*, the plaintiff alleged that he was wrongfully discharged by his former employer and two corporate employees acting in a managerial capacity, whose wrongful conduct was ratified by the former employee. 811 F.2d at 1337. The district court found that the corporate employees had been fraudulently joined because they could not be found liable as individuals under well

settled California law. *Id.* at 1339. The plaintiff attempted to amend his complaint, to remove

the allegation that the managers' acts were ratified, and adding allegations that the managers

acted solely in their own self-interest. *Id.* at 1338. The district court denied plaintiff's attempt to

amend, concluding that it was offered only to destroy diversity, and imposed Rule 11 sanctions.

*Id.*

The Ninth Circuit affirmed. *Id.* at 1339. The court stated:

> On the basis of the complaint alone, the district court could rightly conclude that
> no cause of action had been stated against Moltz and Ladson. Their actions,
> according to the complaint, had been in their managerial capacity. Their actions,
> according to the complaint, had been ratified by General Foods. They were not
> alleged to have acted on their own initiative. McCabe's own declaration alleged
> that they were motivated "in part" by ill will. But it is clear that "if an advisor is
> motivated in part by a desire to benefit his principal," his conduct is, under
> California law, privileged.

*Id.*

### A.      The Magistrate Judge Correctly Applied *McCabe* to the Claim for Intentional Interference with Contract

The Trust Defendants argue that *McCabe* is indistinguishable from the present case. As

in *McCabe*, the Plaintiff alleges the role of the Guam Defendants: (1) as agents of the JLH Trust

and Waibel who acted in the scope of their authority as agents; and (2) that they acted "with the

knowledge, consent, ratification, or approval" of the JLH Trust and Waibel. *See* Docket No. 1,

Compl. ¶ 10. The Trust Defendants claim that these agency/ratifications are the same as those

alleged in *McCabe*.

In contrast, the Plaintiff argues that *McCabe* existed in a very different context than that

of this case. In *McCabe* there was no dispute over whether the individual defendants were

employees of the corporate defendant or that they acted within the scope of their employment.

*Id*. at 1340. In Plaintiff's Complaint, by contrast, the substantive fact alleged against the Guam

Defendants states they were acting on behalf of Waibel, not the JLH Trust, and against the JLH

Trust's interests. *See* Docket No. 1, Compl. ¶ 36. The court agrees and finds that whatever role

the Guam Defendants may have played in this matter is decidedly unsettled and will likely be the

subject of much contention going forward. Accordingly, the court overrules the Objection.

**B.**   **The Magistrate Judge Correctly Applied *McCabe* to the Claim for Aiding and Abetting**

The Trust Defendants also contend that the Magistrate Judge's analysis of the aiding and abetting claim was improper.  They insist that the claim of aiding and abetting is one of aiding and abetting a breach of contract.  However, the court relies upon its previous discussion on the matter of the aiding and abetting cause of action herein and, overrules the Trust Defendants' Objection.  As stated previously, "[w]here it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court." *Albi*, 140 at 312.  Only where there is no reasonable ground for supposing that a plaintiff has a cause of action will the court find that there is fraudulent joinder. *Id.*  Accordingly, in the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.

**III**.   **"Procedural Misjoinder" Theory**

While the Girardi Defendants acknowledge that complete diversity does not exist, they nonetheless ask the court to adopt and apply the legal doctrine of procedural misjoinder to defeat the Plaintiff's motion to remand.  The Magistrate Judge refused to apply the doctrine, finding it inapplicable and unsupported by the Ninth Circuit.  *See* Docket No. 51, Report and Recommendation, 11:8-14:2.  The Girardi Defendants object to the Magistrate Judge's finding in this regard.  They argue that they were procedurally misjoined in this case and should be severed under the doctrine created by the Eleventh Circuit in *Tapscott*.  Under the doctrine of "procedural misjoinder," a plaintiff may *not* defeat diversity jurisdiction simply by fraudulently joining a resident defendant having no real connection with the claim against the diverse defendant.  *Id.* at 1360.  The Girardi Defendants claim that the Plaintiff misjoined the unrelated claim against them (*i.e.*, Claim I for defamation) with unrelated claims against the Trust Defendants (Claims II - VI).  This court overrules the Objection. The Magistrate Judge thoroughly considered the matter when he declined to adopt and apply the doctrine.

In *Tapscott*, the case arose in the context of a putative class action filed in Alabama state court, asserting Alabama state law claims.  An Alabama plaintiff originally sued four defendants,

one of which was an Alabama citizen. 77 F.3d at 1355.  The first amended complaint alleged

identical claims as the original but added sixteen named plaintiffs and twenty-two named

defendants. *Id.*  The second amended complaint contained four additional named plaintiffs,

Alabama residents, and three additional named defendants, including a North Carolina resident.

*Id.*  Unlike the initial and first amended complaints, which alleged violations arising from sales

of service contracts in connection with the sale of automobiles, the second amended complaint

alleged violations of state law arising from the sale of "extended service contracts" in connection

with the sale of retail products.  *Id.*  The result of the amended claims and joinder of parties

under Federal Rule of Civil Procedure 20[12] was to create two distinct groups of named plaintiffs

and defendants: the "automobile class" which was non-diverse and the "merchant class," which

included the diverse North Carolina resident.  *Id.* at 1360.

     The North Carolina resident removed the case to federal court on diversity of citizenship

grounds and filed a motion to sever the claims against him from the claims against the

automobile class defendants. *Id.* at 1355.  The district court granted the motion to sever the two

classes and denied the plaintiffs' motion to remand because it found "there was no allegation of

joint liability between [North Carolina resident] and any other defendant and no allegation of

conspiracy." *Id.* at 1360.

     The Eleventh Circuit affirmed, holding that the factual commonality among the

plaintiffs' claims against the different classes of defendants was not sufficient to satisfy Rule 20.

*Id* at 1360.  The court then held that egregious misjoinder of parties, as measured by Rule 20

standards, amounted to fraudulent joinder, permitting the court to disregard the citizenship of the

non-diverse defendants in a removed action.  *Id.*

     This case is readily distinguishable from *Tapscott.*  In the instant case, there is one

plaintiff and two sets of defendants and, unlike *Tapscott*, it is not complex litigation.  Second, in

---

    [12]  Rule 20(a) imposes two requirements for the permissive joinder of a party: (1) a right to
relief must be asserted against each defendant relating to or arising out of the same transaction or
occurrence or series of transactions or occurrences, and (2) some question of law or fact common
to all parties must arise in the action. *See* Fed.R.Civ.P. 20(a).

1  *Tapscott*, the joinder of defendants was accomplished "solely through Rule 20." Here, the

2  Plaintiff sued all the Defendants in the original Complaint and did not attempt to join the Girardi

3  Defendants under Rule 20. As a district court in the Ninth Circuit noted:

4      [t]he fact that in *Tapscott* new defendants were added under Rule 20 is significant
       because it provided the district court the basis for considering the plaintiff's
5      motives for joinder, concluding that there had been "improper and fraudulent
       joinder, bordering on a sham."

6  *Thakor v. Burlington Ins. Co.,* No. C 09-1465 SBA, 2009 WL 1974511 at *4 (N.D. Cal. July 8,

7  2009).

8       In contrast to *Tapscott*, in which the court found no real connection between the

9  plaintiff's claims against the diverse and non-diverse defendants, the Plaintiff here alleges facts

10  suggesting there is a connection between all the causes of action asserted in the Complaint. For

11  example, the defamation claim against the Girardi Defendants relate to the Retainers and

12  whether the Plaintiff "stole" money from Junior. *See* Docket No. 1, Compl. ¶ 42. And, the facts

13  necessary to prove the falsity of Defendant Lippsmith's statement will likely overlap with the

14  facts necessary to prove the Plaintiff's claims against the Trust Defendants. Clearly there is a

15  nexus between the parties in this case that simply did not exist in *Tapscott*.

16       Accordingly, the court will not apply the *Tapscott* exception to complete diversity– a

17  doctrine the Ninth Circuit has not addressed much less adopted. *See Brazina v. The Paul Revere*

18  *Life Ins*. Co., 271 F. Supp.2d 1163, 1172 (N.D. Cal. 2003) (noting that the Ninth Circuit has not

19  found occasion to address Tapscott, and no other circuit has adopted its rationale); *Osborn v.*

20  *Metropolitan Life Ins. Co.*, 341 F. Supp.2d 1123, 1127 (E.D. Cal.2004) (emphasizing the Ninth

21  Circuit has not adopted the Tapscott "misjoinder of parties" theory).

22       Even if the court applied *Tapscott*, the case simply does not stand for the broad rule that

23  all procedural misjoinder is fraudulent. The Eleventh Circuit found the misjoinder was

24  fraudulent in *Tapscott* because it was "so egregious as to constitute fraudulent joinder." *Tapscott*,

25  77 F.3d at 1360. The Girardi Defendants do not argue that the Plaintiff's misjoinder is "so

26  egregious" as to be fraudulent. Absent evidence that misjoinder borders on a sham, the reason to

27  apply *Tapscott* is even less persuasive.

28

Therefore, in the absence of a compelling reason for this court to adopt and apply the *Tapscott* exception to complete diversity, it is clear from the face of the Complaint that complete diversity does not exist, and removal is improper.

**IV.    Amount in Controversy**

Because the Magistrate Judge found the Defendants had failed to meet their burden in establishing that this court has jurisdiction under either the fraudulent joinder or procedural misjoinder doctrine, the Magistrate Judge found it unnecessary to determine whether the amount in controversy exceeds $75,000.00.[13]

The Defendants object.  However, there being no complete diversity, this court agrees with the Magistrate Judge that there is no need to address the amount in controversy. Accordingly, the Objections are overruled and will not be addressed further.

**V.    Reimbursement of Costs and Fees of Removal**

As a final matter, in addition to remand, the Plaintiff requests reimbursement of costs and fees associated incurred as a result of removal.  The Magistrate Judge declined imposing costs and expenses.

Under 28 U.S.C. 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although a district court has wide discretion in assessing fees pursuant to section 1447(c), *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215 (9th Cir. 2000), absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. *See Martin v. Franklin Capital Corp*., 546 U.S. 132, 141 (2005); *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006). In this case, the court finds that the basis for removal was not so unreasonable as to warrant the imposition of fees upon the Defendants.

Moreover, the Plaintiff did not file an Objection to this finding of the Magistrate Judge.

---

[13]  Diversity jurisdiction exists under Section 1332 only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1).

1   Instead he incorporated his request for fees and costs in his Response to Girardi Objections.  *See*

2   Docket No. 58.  Rule 72 of the Federal Rules of Civil Procedure provides that "[a] party may

3   serve and file objections to the order within 10 days after being served with a copy.  A party may

4   not assign as error a defect in the order not timely objected to."  Similarly, 28 U.S.C. §

5   636(b)(1)(C) provides that "[w]ithin ten days after being served with a copy, any party may

6   serve and file written objections to such proposed findings and recommendations as provided by

7   rules of court.  A judge of the court shall make a *de novo* determination of those portions of the

8   report or specified findings or recommendations to which objection is made."[14]  It is clear that

9   the Plaintiff's "objection" was untimely.   Accordingly, the Magistrate Judge's recommendation

10  stands, and an award of fees and costs shall not be awarded.

11                                          CONCLUSION

12          After reviewing the Plaintiff's Complaint, the court finds that the asserted claims against

13  the Guam Defendants could probably be better articulated and less ambiguous.  Notwithstanding

14  such a finding, the court is unable to conclude that there is no possibility the Plaintiff can set

15  forth a viable claim against the Guam Defendants under Guam law.  "[D]oubt arising from

16  merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of

17  remand." *Alderman*, 191 F. Supp.2d at 1116 (citation omitted).

18          The Defendants, as the removing parties, have failed to satisfy their heavy burden of

19  establishing fraudulent joinder or procedural misjoinder in this case.   Accordingly, the court will

20  not disregard the citizenship of the Guam Defendants for purposes of finding diversity jurisdiction.

21          For all of the foregoing reasons, the court finds no error in the specific challenged

22  findings of the Report and Recommendation, or in the overall conclusion of the Magistrate Judge

23  that federal subject matter jurisdiction is wanting.  Accordingly, it is hereby **ORDERED** that the

24  Report and Recommendation (Docket No. 51) is Adopted and Affirmed and the Defendants'

25

26  _____

27      [14]  After December 1, 2009, 28 U.S.C.§ 636 was amended to provide a party with fourteen
    days to serve and file objections.  However, when the Report and Recommendation was filed, the
28  rule provided for ten days.

1 Objections (Docket Nos. 54 and 56) to the same are **OVERRULED**. There being no federal

2 jurisdiction over this action the court **GRANTS** the Motion to Remand. Accordingly, this action

3 is hereby remanded to the Superior Court of Guam for further proceedings. All other pending

4 motions not yet ruled upon are deemed moot and will not be considered by this court.[15]

5      **SO ORDERED.**

6

7         **/s/ Frances M. Tydingco-Gatewood**

8           **Chief Judge**
        **Dated: Dec 29, 2009**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26      [15] The Girardi Defendants object to the Magistrate Judge's recommendation that this court
take no action on their multi-part motion (Docket No. 7) on the basis that the court has no

27 jurisdiction over the action to grant the relief sought. Consistent with the rulings herein, the court
overrules the objection.

28